October 22, 2007

CAROL KNOWLTON, ESQUIRE
Teich Groh
691 State Highway 33
Trenton, New Jersey 08619

ANDRIJ M. RUDKO
139-6 Third Street
Keyport, New Jersey 07735

Re:    Andrij M. Rudko
       Case No. 06-13981

       David A. Ganz vs. Andrij M. Rudko
       Adversary No. 06-2251

       **MEMORANDUM OPINION**
       **TRIAL: JUNE 28, 2007 & JULY 2, 2007**

Dear Ms. Knowlton and Mr. Rudko:

This matter comes before the Court on a complaint filed by David A. Ganz ("Ganz") against

Andrij M. Rudko ("Rudko" or "Debtor") alleging that a debt owed by the defendant to the plaintiff

is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (B).  Plaintiff calculates damages at

$6,806.38 resulting from breach of contract.

Both parties agree that Rudko entered into a written lease for the rental of Ganz's property

located at 612 Aumack Avenue, Union Beach, New Jersey 07735 for a period of one year. Pursuant to the lease agreement, monthly payments in the amount of $1095.00 were to be made by Rudko to Ganz. The initial meeting between the two parties occurred on July 10, 2005, when Rudko looked at the rental property and filled out an application. The application required disclosure of the applicant's salary and other debts owed. Rudko indicated that his salary for the year of 2005 would be $60,000 with an additional $1,000 to $2,000 per month based on commissions (approximately a minimum of $72,000 for the year). Rudko's actual salary for 2004 and 2005 were $38,082 and $39,541 respectively. The application also had a section labeled "Other current debts and liabilities," which Rudko left blank. Rudko also listed a 2001 BMW and designated the "financed by" question as "N/A - Paid". On July 10, 2005, the lease became effective. Up until March 2006, no disputes arose between either party. Sometime in early March, Rudko left the premises and stopped making his monthly payments. Ganz advertised and sought a new tenant. On May 8, 2006 Debtor filed for Chapter 7 relief and listed Ganz as an unsecured creditor among a total of eighteen creditors. On July 31, 2006 Plaintiff filed this adversary proceeding alleging that Rudko intentionally misrepresented and falsified his financial status in order to secure the lease.

The parties disagree on the process of filling out the application. Rudko claims that the filing of the application was a mere formality and that Ganz had stated to him that he needed an application in the file. Ganz argues that the basis for his decisions to rent his property is based on the information listed on the application. Rudko asserts that while filling out the portion of the agreement concerning his yearly salary, he was told by Ganz not to be "specific and to just "estimate" the salary. Ganz counters that he had told Rudko to fill out the application "to the best of his knowledge." Rudko also stated that he had explained to Ganz that there existed a car loan but

Rudko's father had been making the monthly payments.  Ganz however, does not recollect any such

conversation.

Debtor responds to the Plaintiff's complaint by stating that Ganz was eager to rent the

property and once he found out that Debtor was a network engineer, Ganz had already agreed to

lease the premises to Rudko.  Therefore, the representations made on the application had no bearing

on Ganz's decision to lease the property.  Rudko additionally testified that his reason for leaving the

house was due to poor living conditions, mainly the heaters inability to work during the months of

December and January and also to animals living under the crawlspace of the house making it

difficult to live there.

"Discharge complaints are to be narrowly construed with the burden of proof on the

[p]laintiff."  In re Hosey, 355 B.R. 311, 321 (Bankr. N.D.Ala. 2006).  § 523 (a)(2)(A) excepts from

discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit,

to the extent obtained by...false pretenses, a false representation, or actual fraud, other than a

statement respecting the debtor's or an insider's financial condition..."  Analysis under this section

involves determining whether "(1) that the debtor made a representation; (2) the debtor knew at the

time the representation was false; (3) the debtor made the representation with the intention and

purpose of deceiving the creditor; (4) the creditor relied on the representation; and (5) the creditor

sustained damage as the proximate result of the representation."  In re Tallant, 218 B.R. 58, 64

(B.A.P. 9th Cir. 1998)(internal citations omitted).  Rudko did make representations about his

financial condition to Ganz but he does not seem to have made false representations about anything

else other than his financial condition.  There is no evidence that Rudko did not intend to follow the

terms of the lease or occupy the premises as required by the lease.  Thus, the debt is not non-

3

dischargeable under § 523 (a)(2)(A).

§ 523(a)(2)(B) considers any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing (I) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive is non-dischargeable. In re Nicolai, 2007 Bankr. LEXIS 339 (Bankr. D.N.J. 2007). When arguing that a debt is non-dischargeable the burden is placed on the creditor. Grogan v. Garner, 498 U.S. 279 (1991). "The creditor by the preponderance of the evidence must prove five elements: (1) the debtor made a statement in writing; (2) the statement concerned the debtor's financial condition; (3) the statement was materially false; (4) the debtor made the representation with an intent to deceive the creditor; and (5) the creditor actually and reasonably relied on the misrepresentation." In re Cohen, 334 B.R. 392, 398 (Bankr. N.D. Ill. 2005)(citing In re Morris, 223 F.3d 548, 552 (7th Cir. 2000)).

Undoubtedly, the Debtor's written application presented a financial condition that was materially false thus, satisfying the first, second, and third elements of § 523(a)(2)(B). Even if the Debtor had understood Ganz to say that the Debtor should estimate his salary, it is suspicious that the Debtor overestimated his annual income by at least $34,000. Additionally, the Debtor's Chapter 7 petition now shows that he had outstanding unsecured debts totaling $47,809.00, including a personal loan incurred in September of 2004, credit card accounts, and a deficiency balance regarding a previous auto loan. Given the discrepancies in the application, it is also reasonable to infer that the Defendant intended to deceive Ganz. If indeed Rudko believed that the application process was simply a formality, there would be no cause to hide his true financial condition unless

4

he believed that it would cause him to lose the lease.

Whether Ganz relied on the application is harder to ascertain, but Ganz need only show that he reasonably relied on the false information by a preponderance of the evidence.  "[R]easonable' reliance, while not defined by the Code, entails a 'prudent person' test, and 'is a term courts can apply without additional help.'  It is judged in light of the totality of the circumstances on a case-by-case basis."  In re McGee, 359 B.R. 764, 774 (B.A.P. 9th Cir. 2006).  See Field v. Mans, 516 U.S. at 69-71, 77, (1995).  It is certainly the custom of landlords to rent property based on the information a tenant provides on the application and based on the Debtor's suspicious behavior; it seems that he, too, expected Ganz to depend on the information provided in the application.  Under the totality of the circumstances, the Court finds that Ganz did rely on the information provided by Rudko in leasing his premises to the Debtor.

The Court finds in favor of the Plaintiff and holds the debt non-dischargeable.

The only evidence presented as to the amount of the debt was the monthly calculation based on the lease.  Mr. Rudko does not dispute that calculation, but implies that he is entitled to some sort of offset because the premises were uninhabitable.  While he presented his own testimony that the heat level was generally unacceptable during certain months, he presented neither evidence of any costs undertaken to make the premises habitable nor evidence that he placed rent monies in escrow while he pursued a habitability complaint.  The totality of the record requires the court to enter a

judgment on non-dischargeability in the amount sought by Mr. Ganz, $6,806.38.  Ms. Knowlton

shall submit a form of judgment to that effect.

/s/ *Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge